UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

GAYE E. LAFOE,                          )
                                        )
        *Plaintiff*,                    )
                                        )
v.                                      )          No. 1:14-cv-335-TRM-SKL
                                        )
COMMISSIONER OF SOCIAL SECURITY,        )
                                        )
        *Defendant*.                    )

## REPORT AND RECOMMENDATION

Plaintiff Gaye E. Lafoe ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB"). Each party moved for a judgment [Docs. 12 & 15] with supporting briefs [Docs. 13 & 16]. Plaintiff also filed a response in opposition to Defendant's motion [Doc. 17]. This matter is now ripe, and for the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for judgment on the pleadings [Doc. 12] be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 15] be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

## I.    ADMINISTRATIVE PROCEEDINGS

Plaintiff filed her application for DIB on August 27, 2011, alleging disability since June 1, 2009 (Transcript [Doc. 8 ("Tr.") 14, 97, 156-64). Plaintiff's claim was denied initially and on reconsideration (Tr. 14, 97-99), and she requested a hearing before an administrative law judge ("ALJ") (Tr. 14, 111-16). The ALJ held a hearing on August 6, 2013, during which Plaintiff was represented by an attorney (Tr. 14, 38). The ALJ issued a decision on August 22, 2013, in which the ALJ determined Plaintiff was not under a "disability" as defined in the Social Security Act (Tr. 14-22). Plaintiff timely requested that the Appeals Council review the ALJ's unfavorable

decision (Tr. 1). On October 21, 2014, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner (Tr. 1-5). Plaintiff timely filed the instant action [Doc. 1].

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born in 1958 and was 55 years old on the date of the hearing (Tr. 40). Plaintiff has a college degree in business (Tr. 40). Plaintiff's past relevant work history includes working as a manager at Cigna, as a claims recovery coordinator for a medical billing company, and as a director of a non-profit organization (Tr. 182).

### B. Medical Records

Plaintiff alleged disability due to inflammatory polyarthritis, left ankle tendinitis, irritable bowel syndrome, insomnia, and right elbow epicondylitis (Tr. 16, 214). Plaintiff's arguments primarily focus on the ALJ's consideration of the medical records and opinions provided by certain physicians, including Dr. C. Michael Orquia, Dr. John A. Dorizas, and Dr. W. David Craig, concerning Plaintiff's allegations of disability due to inflammatory arthritis. The relevant period for determining whether Plaintiff is disabled is from June 1, 2009, the alleged onset date, through December 31, 2011, the date last insured (Tr. 16, 22).[1] While only portions of the record pertinent to the parties' arguments will be summarized, the Court has carefully reviewed all relevant evidence in the record.

---

[1] Plaintiff was required to prove that she was disabled prior to December 11, 2011, to be entitled to disability insurance benefits. *See Nagle v. Comm'r of Soc. Sec.*, No. 98-3984, 1999 WL 777355, at *2 (6th Cir. Sept. 21, 1999); *Garner v. Heckler,* 745 F.2d 383, 390 (6th Cir. 1984). Evidence relating to a time outside the insured period is only minimally probative, *see Siterlet v. Sec'y of Health & Human Servs.,* 823 F.2d 918, 920 (6th Cir. 1987), but may be considered to the extent it illuminates a claimant's health before the expiration of her insured status. *See Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988).

2

## 1. Dr. Orquia

Dr. Orquia is Plaintiff's primary care physician who had been treating Plaintiff prior to her alleged disability onset date of June 2009 (Tr. 19).[2] He completed a medical opinion form in June 2012 in which he opined that Plaintiff had limitations because of inflammatory arthritis among other conditions (Tr. 436). He concluded that, in an 8-hour workday, Plaintiff could sit for 15 minutes and stand or walk for 15 minutes, must rest for 2 to 3 hours, and could lift or carry up to 5 pounds infrequently (Tr. 436). He further determined that Plaintiff was limited in the use of her hands to occasionally grasping small objects and infrequently performing fine manipulation, typing, or writing and that her condition caused lapses in concentration or memory for several hours three or more days a week (Tr. 437).

## 2. Dr. Dorizas

Dr. Dorizas is an orthopedist who saw Plaintiff one time during the relevant period (i.e., June 1, 2009 through December 31, 2011) (Tr. 19, 328-29).[3] After the date last insured, in May 2012, Plaintiff complained of right knee pain, but reported that her swelling was slowly

---

[2] In October 2009, Plaintiff visited Dr. Orquia for right knee pain after kicking a basketball one week earlier (Tr. 294-95). This is approximately four months after her alleged disability onset date. Dr. Orquia noted minimal medial tenderness of the right knee but no instability (Tr. 294). Plaintiff returned to Dr. Orquia in December 2009 with her first complaint of mild left ankle pain (Tr. 293). Dr. Orquia diagnosed Plaintiff with tendonitis which was subsequently confirmed by MRI in July 2010 and by two orthopedists, a rheumatologist (Dr. Brit), and a podiatrist (Tr. 19, 245, 255, 292, 313, 334). Imaging studies of Plaintiff's left ankle, left leg, and pelvis in March and April 2010 were normal (Tr. 319, 321-22). X-rays of her lumbar spine showed mild degeneration and post-surgical changes from a prior operation (Tr. 320). Results of a nerve conduction study, needle examination, and physical examination in June 2010 were normal (Tr. 230). Dr. Orquia referred Plaintiff to a rheumatologist, Dr. Michael Brit (Tr. 19, 288).

[3] Dr. Dorizas saw Plaintiff in December 2011 and noted tenderness and slight swelling of Plaintiff's right elbow with full range of motion, normal strength, and no deformity (Tr. 329). Dr. Richard G. Alvarez, Dr. Dorizas's partner, saw Plaintiff earlier in December 2011 with complaints of right "tennis elbow" (Tr. 330). Dr. Alvarez prescribed a splint (Tr. 330). X-rays of Plaintiff's right elbow in December 2011 were normal (Tr. 335). Dr. Alvarez had been treating Plaintiff since July 2011 when he diagnosed her with left chronic posterior tibial tendonitis (Tr. 333-34). He recommended a brace and physical therapy (Tr. 334).

3

improving and much of her pain had dissipated since her last appointment with Dr. Brit, her rheumatologist (Tr. 471-72).  On examination of the right knee, Dr. Dorizas noted a large joint effusion, but normal strength, and no malalignment, no severe tenderness, or instability (Tr. 471-72). X-rays were normal (Tr. 472-73).  Dr. Dorizas wrote that, although he could not completely exclude meniscus problems, examination findings were "not very convincing" (Tr. 472).

Plaintiff returned to Dr. Dorizas in July 2012 to follow up with her right knee and with complaints of left shoulder pain manifesting in the past two weeks (Tr. 468).  X-rays showed mild arthritic changes and mild sclerosis, but no evidence of advanced degenerative joint disease (Tr. 470).  Her right knee and right elbow tenderness had improved (Tr. 468, 470).  Dr. Dorizas administered a steroid injection to Plaintiff's left shoulder (Tr. 470).[4]

Dr. Dorizas completed a medical opinion form the same day in July 2012, in which he opined that Plaintiff had limitations because of inflammatory arthritis in her right knee, left shoulder, and right elbow (Tr. 550).  He concluded that, in an 8-hour workday, Plaintiff could sit for 15 minutes, stand or walk for 15 minutes, lift or carry up to 5 pounds infrequently, and must rest for 2 to 3 hours (Tr. 550).  He further opined that her condition caused lapses in concentration or memory several hours three or more days a week, and assessed limitations in the use of her hands, finding that she could occasionally grasp small objects, and infrequently perform fine manipulation, typing, or writing (Tr. 551).

---

[4]  In August 2012, Plaintiff returned to Dr. Dorizas and requested a referral to another rheumatologist because Plaintiff no longer wanted to see Dr. Brit (Tr. 466).  She reported that she had not taken the Meloxicam Dr. Brit had prescribed, and Dr. Dorizas recommended that she reconsider taking the medication (Tr. 466-67).  She also reported improvement in her left shoulder pain (Tr. 466).

4

### 3. Dr. Craig

Dr. Craig, a rheumatologist, completed a medical opinion form in October 2012 (Tr. 440-42). He wrote that Plaintiff had rheumatoid arthritis and inflammatory polyarthritis, among other conditions (Tr. 440). He opined that, in an 8-hour workday, Plaintiff could sit for 15 minutes, stand or walk for 15 minutes, lift or carry up to 5 pounds infrequently, and must rest for 2 hours (Tr. 440). He further opined that her condition caused often lapses in concentration or memory, and assessed limitations in the use of her hands, finding that she could infrequently grasp small objects or perform fine manipulation, typing, or writing (Tr. 441).

The earliest medical record of Plaintiff's visit with Dr. Craig is dated November 26, 2012, although this record references a possible visit on September 24, 2012 (Tr. 541), both of which occurred after Plaintiff's last date of insured status, December 31, 2011. Dr. Craig noted that Dr. Brit had diagnosed unspecified inflammatory polyarthropathy, which as explained below is a diagnosis Dr. Britt never made (Tr. 546). Dr. Craig prescribed Alzufidine and administered a left shoulder steroid injection (Tr. 546). In April 2013, Plaintiff reported improvement in her hip, shoulder, and left ankle pain (Tr. 530, 533). Dr. Craig noted that she did not exercise or stretch, and strongly encouraged her to do so (Tr. 530, 533).

### 4. Dr. Brit

Dr. Brit first evaluated Plaintiff for joint pain in June 2010 upon referral from Dr. Orquia, Plaintiff's primary care physician (Tr. 256-58). Dr. Brit noted that, in addition to the normal nerve conduction study results, Plaintiff had undergone a series of other laboratory tests with unremarkable findings (Tr. 256). On examination, Dr. Brit observed tenderness and limited range of motion in Plaintiff's left ankle, but no muscle atrophy or abnormal reflexes (Tr. 257). Dr. Brit administered a left ankle steroid injection (Tr. 257). In November 2010, Plaintiff returned to Dr. Brit complaining of pain in both ankles (Tr. 254). On examination, Dr. Brit

5

observed ankle tenderness, but noted no warmth, erythema, swelling, or effusion (Tr. 254). He noted that other joints were unremarkable (Tr. 254). In reviewing medical records, Dr. Brit observed that the July 2010 MRI confirmed tendonitis of the left ankle, and he noted a "[q]uestion of . . . inflammatory [arthritis]," for which he prescribed folic acid and Methotrexate (Tr. 255).

In January 2011, Plaintiff told Dr. Brit that, in additional to taking Methotrexate, she had been treating her pain with over-the-counter ibuprofen, which took "the edge off" (Tr. 252). Dr. Brit noted that she had possible inflammatory arthritis, but wrote that her "[d]iagnosis remains unclear" (Tr. 253). At a visit with Dr. Brit in March 2011, Plaintiff continued to complain of pain in her ankles, but reported no stiffness, and no problems with her other joints, or other issues (Tr. 250). Dr. Brit again noted no signs of joint inflammation, no muscle atrophy, and normal reflexes, and he observed that Plaintiff's gait was not antalgic (Tr. 251). He noted overall improvement and recommended that she continue taking Methotrexate but decrease her use of over-the-counter ibuprofen (Tr. 251). Plaintiff returned to Dr. Brit approximately a year later in May 2012 for evaluation of joint pain in her right knee (Tr. 521-23). Dr. Brit noted that a bone density scan showed no changes in the lumbar spine or neck, her blood count and metabolic panel were normal, and laboratory reports were negative for rheumatoid factor (Tr. 521). She had not been taking her prescribed Methotrexate (Tr. 521-22). On examination, Dr. Brit noted no joint effusion or swelling, no signs of inflammatory arthritis of the hands, wrists, elbows, or shoulders, no muscle atrophy, and normal pulses and reflexes (Tr. 522). She wore a brace on her left ankle and her gait appeared stiff, but not antalgic (Tr. 522). Overall, Dr. Brit noted no signs of irreversible joint damage or any significant arthritic problems (Tr. 522). He stated that the "[u]nifying diagnosis remains unclear" and ordered lumbar spine and joint x-rays (Tr. 522-23).

In July 2012, Dr. Brit noted unremarkable joint x-rays and blood test results (Tr. 513). On examination, Dr. Brit observed no clear evidence of joint inflammation (Tr. 514). She had no muscle atrophy, normal reflexes, and her gait was not antalgic (Tr. 514). Dr. Brit noted that Plaintiff did not cooperate with a left shoulder examination, but when distracted demonstrated "pretty good" external and internal rotation (Tr. 514). He further noted that "in spite of my previous effort, I have not found undisputable signs of inflammation in patient's joints" (Tr. 514). He diagnosed diffuse pain syndrome and prescribed Meloxicam (Tr. 514). He refused Plaintiff's request to complete disability paperwork (Tr. 513, 515).

### 5.    Dr. Mullady, Dr. Harris, and Dr. Millis

Dr. Thomas Mullady performed a consultative examination of Plaintiff in April 2012 (Tr. 346-49). Plaintiff told Dr. Mullady that she had been diagnosed with inflammatory arthritis (Tr. 346). Dr. Mullady incorrectly noted that the records from her rheumatologist diagnose undifferentiated inflammatory arthritis while x-rays of the left foot and right elbow have been normal (Tr. 346). On examination, Dr. Mullady noted no gross joint deformities (Tr. 347). He further noted decreased range of motion in Plaintiff's lumbar spine, right shoulder, hip joints, and left ankle with normal range of motion in all other joints including Plaintiff's fingers and hands (Tr. 347-48). Dr. Mullady found that Plaintiff has normal muscle strength in her arms and legs, normal manual dexterity, and a grip strength of four out of five (Tr. 348). He opined that Plaintiff could occasionally lift and/or carry a maximum of 10 pounds for up to one-third of an 8-hour workday and frequently could lift and/or carry a maximum of 10 pounds from one-third to two-thirds of an 8-hour workday (Tr. 348).

State agency medical consultant Dr. Tyra Harris completed a physical residual functional capacity ("RFC") assessment in May 2012 (Tr. 358-367 (also identified as "Exhibit No. 12F")). Dr. Harris opined that Plaintiff could lift and/or carry 10 pounds frequently, stand and/or walk at

7

least 2 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, and push and/or pull without limitation (Tr. 359). Plaintiff could occasionally perform postural activities except that she could never climb ladders, ropes, or scaffolds (Tr. 360). She was limited to occasional reaching in all directions with her right arm and was not limited in her manipulative abilities (Tr. 361). Environmentally, Dr. Harris determined that Plaintiff should avoid concentrated exposure to extreme cold and extreme heat and avoid moderate exposure to hazards such as machinery and heights (Tr. 362). Dr. Harris noted that her medically determinable impairments included in part inflammatory arthritis (Tr. 365).

Dr. James Millis, a state agency medical consultant, reviewed the record upon the agency's reconsideration review and affirmed the May 2012 initial physical assessment of Dr. Harris (Tr. 423).

### 6. Dr. Sumida

Dr. Mark S. Sumida, an orthopedist, evaluated Plaintiff for left ankle pain in August 2010 (Tr. 246). Plaintiff relayed a history of rheumatoid arthritis but stated it was currently in remission (Tr. 246). After reviewing x-ray and MRI results from July 2010, Dr. Sumida diagnosed posterior tibial tendonitis in Plaintiff's left ankle, for which he prescribed anti-inflammatory medication and an air boot, and recommended physical therapy (Tr. 245-46, 313). In September 2010, Dr. Sumida noted that the anti-inflammatory medication and physical therapy had not significantly improved her symptoms or the tenderness in her left ankle tendon (Tr. 244). Dr. Sumida administered a left ankle steroid injection in October 2010 (Tr. 243). In November 2010, Plaintiff reported to Dr. Sumida that her ankle pain started to return two weeks after her injection, and she said physical therapy provided no improvement (Tr. 242). Dr. Sumida allowed Plaintiff to discontinue physical therapy (Tr. 242, 234-35). He recommended

that she consult with a rheumatologist (Tr. 242). It is unclear from Dr. Sumida's records whether he was aware of Plaintiff's concurrent treatment with Dr. Brit, a rheumatologist.

### C. Hearing Testimony

On August 6, 2013, the ALJ conducted a hearing in Plaintiff's case (Tr. 36-96). The Plaintiff and a vocational expert ("VE") testified at the hearing. The Court has carefully reviewed the transcript of the testimony at the hearing. While it is not necessary to summarize the testimony herein, portions of the hearing relevant to the parties' arguments will be addressed as appropriate in the respective sections of the Court's analysis below.

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

9

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010).

**B.    The ALJ's Findings**

Plaintiff meets the insured status requirements through December 31, 2011 (Tr. 16). At step one of the sequential process, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 1, 2009, the alleged onset date (Tr. 16). At step two, the ALJ found Plaintiff had the following severe impairments: history of lumbar surgery, chronic left ankle tendonitis, and obesity (Tr. 16). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 17-18). The ALJ found Plaintiff had the RFC to perform:

sedentary work as defined in 20 CFR 404.1567(a) except she can perform occasional postural activities but no climbing ladders, ropes, or scaffolding; she can occasionally reach in all directions with her right arm (and reach without limitation with her left arm); she should avoid concentrated exposure to extreme cold and heat; and she should avoid even moderate exposure to hazards as set

10

forth in Exhibit 12F.

(Tr. 18).[5]  At step four, the ALJ found Plaintiff was able to perform her past relevant work as a medical billing recovery clerk and as an executive director of a non-profit organization (Tr. 22). These findings led to the ALJ's determination that Plaintiff was not under a disability at any time from June 1, 2009, the alleged onset date, through December 31, 2011, the date last insured (Tr. 22).

## IV.    ANALYSIS

Plaintiff alleges the ALJ erred: (1) in giving "little weight" to the opinions of Plaintiff's treating physicians, Dr. Orquia, Dr. Dorizas, and Dr. Craig; (2) by failing to explain what evidence provided the factual foundation for his RFC determination; and (3) by failing to consider the medical evidence of Dr. Sumida.

### A.    Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence.  42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (internal citations omitted).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *McClanahan*, 474 F.3d at 833 (internal citations omitted).  Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight."  *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations omitted).  If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if

---

[5] Sedentary works involves lifting no more than 10 pounds at a time, occasionally lifting or carrying articles like docket files, ledgers, and small tools, standing and/or walking for a total of no more than approximately 2 hours of an 8-hour workday, and sitting for approximately 6 hours of an 8-hour workday.  *See* 20 C.F.R. § 404.1567(a); Social Security Ruling (SSR) 83-10.

substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

### B.    Treating Physicians Rule

Plaintiff argues that the ALJ erred in giving "little weight" to the medical assessments of Plaintiff's treating physicians, Dr. Orquia, Dr. Dorizas, and Dr. Craig [Doc. 13 at Page ID # 601]. Plaintiff contends that the ALJ criticized their opinions as being suspicious due to their

similar conclusions regarding the restrictions caused by Plaintiff's conditions [*id.*].[6]  Plaintiff further contends that the ALJ erred by "summarily discount[ing] the opinions of Drs. Orquia and Dorizas for the sole reason that they listed inflammatory arthritis as the primary diagnosis underlying the restrictions, a diagnosis which he believes was not fully established until later in 2012" and that the ALJ completely disregarded the opinion of Dr. Craig [*id.* at Page ID # 601-02].

Defendant did not contest that Dr. Orquia, Dr. Dorizas, and Dr. Craig should be considered as Plaintiff's treating physicians.[7]  The law governing the weight to be given to a treating physician's opinion, often referred to as the treating physician rule, is well settled: A treating physician's opinion is entitled to complete deference if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2) (now (c)(2)) (alteration in original).  To determine whether substantial evidence is inconsistent with the treating source's

---

[6] Plaintiff states the ALJ did not send interrogatories to these doctors to confirm that his suspicions were well founded [Doc. 13 at Page ID # 601].  The ALJ, however, is under no obligation to investigate the claimant's case as it is the claimant's burden to produce sufficient evidence to establish the existence of a disability.  *See Watters v. Comm'r of Soc. Sec.*, 530 F. App'x 419, 425 (6th Cir. 2013) (citing *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012)).

[7] It is questionable whether Dr. Craig should be considered a treating physician.  *See Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1000-01 n.3 (6th Cir. 2011) (stating that "it is questionable whether a physician who examines a patient only three times over a four-month period is a treating source"); *see also Kepke v. Comm'r of Soc. Sec.*, No. 15-1315, 2016 WL 124140, at *4 (6th Cir. Jan. 12, 2016) ("It was not improper for the ALJ to discount [physician's] opinion on the basis that he treated [claimant] only three times over a three-month period.").  Dr. Craig saw Plaintiff at most two times over a two-month period after the relevant period.  While Defendant appears not to contest Dr. Craig's status as a treating physician, the ALJ nevertheless properly discounted Dr. Craig's opinion as explained herein.  The brevity of the treatment relationship with Dr. Craig as well as the fact that it occurred outside of the relevant time period for establishing a disability further support the ALJ's decision to discount Dr. Craig's opinion.

13

opinion, the ALJ must examine the record as a whole, "not just medical opinions." *Kepke v. Comm'r of Soc. Sec.*, No. 15-1315, 2016 WL 124140, at *3 (6th Cir. Jan. 12, 2016) (citing *Hickey-Hanes v. Barnhart*, 116 F. App'x 718, 723-24 (6th Cir. 2004). Even if the ALJ determines that the treating source's opinion is not entitled to controlling weight, the ALJ must give "good reasons" for the weight he accords the treating source opinion, applying factors such as "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192-93 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2) (now (c)(2)); SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)).

Here, the ALJ reviewed and considered the entire record concerning Plaintiff's allegations of inflammatory arthritis in assessing her RFC (Tr. 16-17, 18-21). The ALJ gave greater weight to the findings and conclusions of Dr. Brit based on his treating relationship with Plaintiff spanning two years over Dr. Craig's findings which the ALJ determined were inconsistent with the record and relied on an alleged prior diagnosis of inflammatory arthritis that was never made (Tr. 20-21). The ALJ discussed that "Dr. Brit considered [Plaintiff's] laboratory findings, which did not fully support a diagnosis of inflammatory arthritis, and he documented in depth [Plaintiff's] clinical examinations, which also do not establish the serious abnormalities associated with this diagnosis" (Tr. 21). The ALJ noted that Dr. Craig saw Plaintiff one time in September 2012, which was after the relevant time period, before he completed the medical source statement indicating disability (Tr. 21). The ALJ further commented that in November 2012 "Dr. Craig noted severe rheumatoid arthritis changes of the hands and rheumatoid arthritis changes of the feet, which no other examining or treating source ever noted before . . . Later,

14

however, the observation was mild osteoarthritis" (Tr. 20-21). The ALJ determined that at best Dr. Craig's records would indicate arthritic changes not present as of December 2011 (Tr. 21).

While Plaintiff's attorney argued to the ALJ that the consistency of Dr. Orquia's, Dr. Dorizas's and Dr. Craig's medical source statements established Plaintiff's inability to perform sustained work at a sedentary exertion level, the ALJ contrarily discussed how all three physicians omitted a response for the total time Plaintiff could sit, stand, and walk in an 8-hour day and "were otherwise so similar as to raise suspicions rather than support these opinions" (Tr. 21). The ALJ pointed out that Dr. Orquia and Dr. Dorizas attributed Plaintiff's extreme level of limitation to a diagnosis of inflammatory arthritis, which the ALJ determined was not supported by the record during the relevant period (Tr. 21). The ALJ explained that he gave little weight to Dr. Craig's assessment "because his records do not independently establish inflammatory arthritis, but appear to accept a diagnosis that was actually not previously established" (Tr. 21). The ALJ further noted that "[a]ll three opinions rated [Plaintiff's] pain as severe or extreme, but these physicians' treatment records document neither subjective complaint of nor objective support for such severe pain (except the operating diagnosis of inflammatory arthritis)" which was never made (Tr. 21). The ALJ discussed in detail Dr. Brit's records and treatment of Plaintiff and his inability to substantiate a diagnosis of inflammatory arthritis during the relevant period (Tr. 20). In fact, the ALJ pointed out that, based on two years of clinical examination and treatment, Dr. Brit had not found undisputable signs of inflammation in Plaintiff's joints (Tr. 20, 514).

Contrary to Plaintiff's arguments, I **FIND** that the ALJ properly considered the medical assessments and medical records of Dr. Orquia, Dr. Dorizas, and Dr. Craig along with the entire record and that the ALJ properly explained his rationale for giving them "little weight" after following the guidelines of 20 C.F.R. § 404.1527 by considering some of the listed factors such

15

as the length of the treatment relationship, the supportability of the opinions, and the consistency of the opinion with the record as a whole. *See Kepke*, 2016 WL 124140, at *5 (finding the ALJ gave good reasons for discounting claimant's treating physician's opinion by considering the length of the treatment relationship and frequency of examination, the supportability of the opinion, and the consistency of the opinion with the record as a whole); *Francis v. Comm'r Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011) (citation omitted) ("Although [20 C.F.R. § 404.1527(d)(2) (now (c)(2))] instruct[s] an ALJ to consider these factors, they expressly require only that the ALJ's decision include "good reasons . . . for the weight . . . give[n] [to the] treating source's opinion" — not an exhaustive factor-by-factor analysis.").

Plaintiff further contends that various facts from the record support a diagnosis of inflammatory arthritis and that Dr. Orquia's, Dr. Dorizas's, and Dr. Craig's opinions were consistent with each other and the record as a whole and thus the ALJ should have afforded them controlling weight and made a finding of disability [Doc. 13 at Page ID # 604-05]. The question is not whether there is evidence in the record to support a finding of disability, but rather whether the decision reached by the ALJ is supported by substantial evidence in the record. *See Smith*, 99 F.3d at 782 (stating that "even if the district court—had it been in the position of the ALJ— would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ" where substantial evidence supported the ALJ's decision). I **FIND** that there is substantial evidence in the record to support the ALJ's "good reasons" for discounting the opinions of Dr. Orquia, Dr. Dorizas, and Dr. Craig, specifically that they were inconsistent with specific evidence in the record and with the medical records of treating physician Dr. Brit, a rheumatologist, who did not diagnose Plaintiff with inflammatory arthritis during the relevant period.

16

## C.    Support for the ALJ's RFC Determination

Plaintiff contends that the ALJ failed to properly explain what evidence provided the support and factual foundation for his RFC determination [Doc. 13 at Page ID # 605; Doc. 17 at Page ID # 632].  Plaintiff argues that, while the ALJ gave little weight to the three treating source opinions discussed above, "there is no opinion evidence that is actually granted weight" [Doc. 13 at Page ID # 605].  Plaintiff refers to the evidence of non-examining state medical consultants and the consultative examiner and argues that these "are not recited or referred to in the [ALJ's] decision (apart from a brief citation to Exhibit 12F in regards to the restriction for moderate exposure to hazards)" [Doc. 13 at Page ID # 605].  Plaintiff further contends that the ALJ was required to assess the amount of weight given to the opinion of non-examining doctors similar to the requirements for treating physicians, which the ALJ failed to do [Doc. 13 at Page ID # 605-06; Doc. 17 at Page ID # 633]. Plaintiff relies on an unreported district court case from Ohio, *Lyburtus v. Astrue*, No. 2:08-cv-724, 2009 WL 2998964 (S.D. Ohio Sept. 11, 2009), to support her contentions.

In *Lyburtus*, the ALJ failed to mention by name or discuss the opinions of the claimant's treating sources and non-examining sources concerning the RFC determination.  The court remanded the case, finding that it was "impossible for the Court to determine if the ALJ actually followed the law which required him to consider those opinions, and also impossible for the Court to determine if he gave any of them appropriate weight (or, conversely, had some reason to

17

discount their opinions) because he articulated no rationale for ignoring them altogether."[8]  2009 WL 2998964, at *6.  Here, Plaintiff argues that "the Commissioner's decision provides even less guidance than its decision in *Lyburtus*, as there is no mention or analysis of the opinions of Dr. Thomas Mullady, Dr. Tyra Harris, or Dr. James Millis.  Moreover, while the ALJ gave little weight to the multiple opinions of [Plaintiff's] treating physicians and specialists, he failed to provide the factual foundations of his own findings by giving 'weight' to any contrary opinions." [Doc. 13 at Page ID # 607].

Defendant contends that Plaintiff's assertion is inaccurate and counters that the ALJ appropriately considered the opinions of consulting physicians as required [Doc. 16 at Page ID # 629].  Defendant points out that the ALJ thoroughly discussed the report of Dr. Mullady, a consultative examiner, in his decision and that the ALJ referred to the opinion of state agency physician Dr. Harris in his decision, questioned the VE regarding the jobs Plaintiff could perform under the limitations Dr. Harris assessed, and incorporated Dr. Harris's findings into his RFC determination by citing Dr. Harris's opinion in the RFC formulation itself [Doc. 16 at Page ID # 629].

---

[8] Contrary to the *Lyburtus* case, here, as is evident from the ALJ's opinion, the ALJ followed the law and the treating physician rule.  Additionally, Plaintiff relies on *Love v. Astrue*, No. 2:07-cv-593 BSJ, 2009 WL 102838, (D. Utah Jan. 14, 2009) and *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830 (11th Cir. June 22, 2001) to support her position that the ALJ must state the weight afforded to the opinions of non-examining state medical consultants and consultative examiners. This Court is not bound by these opinions.  In *Love*, the district court in Utah was unable to determine whether substantial evidence supported the ALJ's RFC determination because the non-physician sources all concluded that claimant was either not able to work or substantially limited in her ability to work and if the ALJ had given any more weight to one or more of these opinions then the ALJ would have reached a different conclusion at step four.  Contrarily here, the ALJ's RFC determination was consistent with the assessments and opinions of Dr. Mullady, Dr. Harris, and Dr. Millis that Plaintiff was capable of performing sedentary work with additional limitations.  In *Lawton*, the ALJ failed to provide good reasons for not giving two of claimant's treating physicians' opinions controlling weight when those opinions were contrary to the ALJ's RFC assessment. Contrarily, here, the ALJ provided good reasons for discounting Plaintiff's three treating physicians' opinions that determined Plaintiff was unable to perform any sedentary work.

The opinions of examining physicians, unlike those of treating physicians, are "entitled to no special degree of deference." *Cangialosi v. Comm'r of Soc. Sec.*, No. 13-10210, 2014 WL 1260711, at *5 (E.D. Mich. Mar. 27, 2014) (quoting *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)). Similarly, there is no requirement that the ALJ give good reasons for the weight afforded to the opinions of examining or consulting physicians who do not qualify as treating physicians. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875-76 (6th Cir. 2007) ("the SSA requires ALJs to give reasons for only *treating* sources"). Dr. Mullady's opinion does not receive the deference that a treating physician's opinion would, but rather receives the weight that the ALJ accords the opinion. The ALJ is not required to adopt any physician's assessment of Plaintiff's RFC. "Although physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(e)(1)).

The ALJ specifically noted that Dr. Mullady examined Plaintiff in April 2012 after the date last insured and found a "diminished range of right shoulder and lumbar spine motion, consistent with [Plaintiff's] history of shoulder and back surgery" (Tr. 20, 347-48). The ALJ also noted Dr. Mullady's finding of diminished range of hip motion bilaterally and diminished left ankle motion (Tr. 20, 348). The ALJ discussed Dr. Mullady's findings of full strength in all extremities, nearly full grip strength, normal manual dexterity, and no other upper extremity joint abnormality (Tr. 20, 348). The ALJ concluded that "[n]othing about this consultative examination persuades me that [Plaintiff] was unable to perform the range of sedentary work activity set forth [in the RFC determination] through December 2011" (Tr. 20). The ALJ determined that Dr. Mullady's examination findings were consistent with an RFC limitation to

sedentary work requiring only occasional reaching in all directions with her right arm, no climbing or ladders, ropes, or scaffolding, and only occasional other postural activities (Tr. 20).

While more weight is generally given to the opinions of treating physicians than to those of non-examining medical sources, *see* 20 C.F.R. § 404.1527(c)(1), "the opinions of non-examining state agency medical consultants have some value, and under certain circumstances can be given significant weight." *Branch v. Astrue,* No. 4:10CV04852010 WL 5116948, at *5 (N.D. Ohio Dec. 9, 2010). Non-examining sources are regarded "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." SSR 96–6p, 1996 WL 374180, *2. "Thus, the opinions of one-time examining professionals, state agency doctors, and non-examining consultative professionals should be considered, and may be given some or even significant weight depending on the analysis of the same factors as those considered for treating physicians, such as supportability, consistency and specialization." *Hunt v. Colvin*, No. CIV. 14-78-GFVT, 2015 WL 2065419, at *6 (E.D. Ky. May 4, 2015); *Branch,* 2010 WL 5116948, at *5; *see also* 20 C.F.R. § 404.1527(e); SSR 96–6p, 1996 WL 374180, at *2–*3. *See also* 20 C.F.R. § 404.1527(e)(2)(i)-(ii); SSR 96–8p, 1996 WL 374184, *7 ("[t]he RFC assessment must always consider and address medical source opinions").

While the ALJ did not reference Dr. Harris and Dr. Millis, the state medical consultants, by name, it is clear from his decision that he considered their opinions in determining the RFC assessment.[9] As previously discussed, the ALJ properly explained his basis in the record for determining that Plaintiff did not have a medically determinable inflammatory arthritis

_____

[9] The ALJ's failure to mention Dr. Harris's opinion by name does not warrant a remand. *See Henke v. Astrue*, 498 F. App'x 636, 641 (7th Cir. 2012) (holding remand for further discussion of the opinions of the state agency non-examining physicians not warranted because their decisions gave rise to the initial denial and the need for a hearing).

impairment during the relevant time period. Specifically, he explained that "[e]ven if inflammatory arthritis was accepted as a medically determinable impairment, as it was by medical consultants for the State agency, it was not severe enough during the period in question to impose work-related limitations beyond the range of sedentary work activity established in this decision" (Tr. 16-17, 365, 423).[10] In fact, the RFC assessment completed by Dr. Harris and confirmed by Dr. Millis did not include more limited restrictions that would lead to a finding that Plaintiff was unable to perform work at a sedentary level. The ALJ questioned the VE during the hearing regarding the jobs that Plaintiff could perform under the limitations Dr. Harris had assessed (Tr. 22, 74-76). Ultimately, the ALJ incorporated Dr. Harris's findings into the RFC formulation and specifically cited to Dr. Harris's opinion (i.e., Exhibit 12F) in the RFC formulation (Tr. 18).

Thus, contrary to Plaintiff's arguments and unlike the *Lyburtus* case, I **FIND** that the ALJ properly considered the opinions of the consultative examiner and agency medical consultants and, from a review of the ALJ's opinion, it is obvious that he used them in determining Plaintiff's RFC and even incorporated the opinions of the consultative sources into the RFC determination. I further **FIND** that there is substantial evidence in the record to support the ALJ's RFC determination.

### D. Medical Evidence of Dr. Mark Sumida

Plaintiff claims that the ALJ erred by failing to consider and completely ignoring the findings and reports of Dr. Sumida [Doc. 13 at Page ID # 607]. Plaintiff contends that the ALJ must thoroughly discuss and analyze the objective medical and other evidence in the record

---

[10] Dr. Harris completed her assessment in May 2012, which was approximately two months prior to Dr. Brit's conclusion in July 2012 after approximately two years of clinical examination that the medical findings did not support a diagnosis of joint inflammation within the relevant period (Tr. 514). Additionally, Dr. Millis merely affirmed Dr. Harris's assessment during the reconsideration phase (Tr. 16, 365, 423).

[Doc. 13 at Page ID # 607]. Defendant counters that the ALJ is not required to discuss all of the evidence as long as the factual findings as a whole show that the ALJ implicitly considered the records as a whole [Doc. 16 at Page ID # 630]. Defendant further explains that the ALJ cited Dr. Sumida's treatment records noting that Dr. Sumida, an orthopedist, and another orthopedist confirmed a diagnosis of tendonitis of Plaintiff's left ankle and the ALJ ultimately accounted for Plaintiff's left ankle limitations by limiting Plaintiff to a reduced range of sedentary work [Doc. 16 at Page ID # 630]. Defendant points out that Plaintiff fails to explain how Dr. Sumida's records would warrant additional RFC restrictions [*id.*].

Contrary to Plaintiff's position, there is no requirement that the ALJ discuss every piece of evidence in the record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (quoting *Loral Defense Systems-Akron v. NLRB*, 200 F.3d 453 (6th Cir. 1999)) (stating that "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence"). Nevertheless, in order to affirm a decision which omits some significant evidence, the reviewing court must be able to discern that the ALJ "consider[ed] the evidence as a whole and reach[ed] a reasoned conclusion." *Boseley v. Comm'r of Soc. Sec.*, No. 09-6058, 2010 WL 3927043, at *4 (6th Cir. Sep. 30, 2010); s*ee also SEC v. Chenery Corp.*, 318 U.S. 80, 92 (1943) (reviewing court may not affirm the Commissioner's decision on grounds not articulated by the ALJ). Here, as Defendant points out, the ALJ demonstrated that he considered Dr. Sumida's medical records when he cited to Dr. Sumida's medical evidence (Exhibit 3F) in confirming that two orthopedists (one of which is clearly Dr. Sumida) confirmed the diagnosis of tendonitis (Tr. 19). I **FIND** that the ALJ properly considered the record as a whole, including Dr. Sumida's medical records, and the ALJ's RFC determination is supported by substantial evidence in the record.

## V.      CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I

**RECOMMEND**[11] that:

1) Plaintiff's motion for judgment on the pleadings [Doc. 12] be **DENIED**.

2) The Commissioner's motion for summary judgment [Doc. 15] be

   **GRANTED**.

3) The Commissioner's decision denying benefits be **AFFIRMED**.


s/ *Susan K. Lee*
_____
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[11] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party.  Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure.  Failure to file objections within the time specified waives the right to appeal the district court's order.  *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985).  The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general.  *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).